IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 23, 2014 Session

## TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA v. CITY OF SOUTH PITTSBURG, TENNESSEE

**Appeal from the Circuit Court for Marion County**
**No. 18589     J. Curtis Smith, Judge**

---

**No. M2014-00269-COA-R9-CV - Filed January 30, 2015**

---

In a suit arising out of a construction project at a wastewater treatment facility, the City of South Pittsburg brought an action against an engineering firm and a construction firm for breach of contract, negligence and professional negligence.  The insurance company which issued a performance bond covering the project was added as a party and moved for summary judgment on the ground that the City had not instituted a proceeding to recover under the bond within the two year period specified in the bond for doing so.  The insurance company appeals the denial of its motion.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER, and BRANDON O. GIBSON, JJ., joined.

Jarrod W. Stone, Nashville, Tennessee, for the appellant, Travelers Casualty and Surety Company of America.

William L. Gouger, Jr., Jasper, Tennessee, for the appellee, City of South Pittsburg, Tennessee.

Parks T. Chastain and Gordon C. Aulgur, Nashville, Tennessee, for the appellee, Bituminous Casualty Corporation.

**OPINION**[1]

This case comes before us a second time. It arises out of a suit for breach of contract and professional negligence filed August 18, 2009, by the City of South Pittsburg ("the City") against James C. Hailey & Co. ("Hailey"), an engineering firm hired to design and supervise repairs to the existing lagoon and the construction of a new lagoon at the City's wastewater treatment plant, and W&O Construction Company, Inc. ("W&O"), which had been engaged to complete the improvements; the complaint also sought a declaratory judgment construing the terms of the May 6, 2008, contract between the City and W&O.[2] By late 2008, the project had progressed to the point where the facility could be put into operation for purposes of testing and startup. In an amended complaint filed March 17, 2011 (the "amended complaint"), the City alleged that a hole developed in the liner of the existing lagoon in February 2009 causing the wastewater to drain completely and that, three days later, a hole developed in the liner of the new lagoon, as did a sinkhole.

A dispute arose between the City and W&O regarding responsibility to repair the damage; Tracy Wooden, counsel for the City, sent a letter to Travelers Casualty and Surety Company of America ("Travelers"), which had issued a performance bond in the amount of $1,719,700.00, and W&O on June 24, 2009, stating in part:

> This letter will serve as a follow up to my telephone discussions with Mr. Michael Burkhardt with [Travelers] ("Surety") today. Although we have previously provided written notice of our positions to you, Mr. Burkhardt requested that I provide this additional correspondence.
>
> As we have previously indicated, and as we hereby affirm, [W&O] ("Contractor") is obligated pursuant to Contract 106 to complete the construction of the sewer treatment plant project so that it will operate in a

---

[1] Unless otherwise noted, the factual background in this opinion is taken from the pleadings.

[2] The complaint alleged that the existing and new lagoons failed, as a result of which the expansion of the facility was not completed, and that the City incurred additional fees and expenses, including $55,000 in fines, and penalties and other restrictions imposed by the Tennessee Department of Environment and Conservation. On March 16, 2010, the City amended the complaint to include a claim for negligence and a second claim for breach of contract against W&O, and on January 5, 2011, the City amended the complaint to add Bituminous Casualty Corporation ("Bituminous"), which had issued a builder's risk policy to W&O. Bituminous moved for summary judgment, contending that construction on the wastewater facility was completed in late 2008 and that coverage under the policy ended at that time; the court granted the motion. On appeal, this court held that there was a genuine issue of material fact regarding the date at which construction was completed and reversed the grant of the motion. *City of South Pittsburg v. Hailey*, No. M2012-01185-COA-R3-CV, 2013 WL 3355658, at *5 (Tenn. Ct. App. June 27, 2013).

2

functional manner. Contractor is contractually obligated to complete such project within the contracted price. The responsibilities of Contractor are clear pursuant to the language of Contract 106 and based on at least one decision issued by the Tennessee Supreme Court against [W&O].

We hereby request a meeting with representatives of both of your companies in the offices of our client within fifteen days (as explained below, an earlier meeting is appropriate under the circumstances) of the date of this letter to receive from you your plan for performing the Contract.

Upon receiving confirmation from Surety that Contractor and/or Surety will complete the project for the contracted price, Owner will pay to Surety the balance of the contract price.

Representatives of the City, Travelers, and W&O met on July 9, and on July 22 Mr. Wooden sent a letter to Tim Huddleston, Vice President of W&O, stating in part:

Prior to such July 9, 2009, meeting, and again during the July 9, 2009, meeting [W&O] refused to complete the project for the bid price. We have since been informed by [Travelers] that further discussions between [W&O] and [Travelers] have not led to [W&O] being willing to perform. Based upon the refusal of [W&O], [Travelers] insisted that we issue a Contractor Default notice pursuant to section 3.2 of the performance bond before [Travelers] will proceed with its obligations under the performance bond. This letter will serve as such Contractor Default notice as required by [Travelers] as explained above. If W&O has since reconsidered its position and has become willing to complete the project, please let me know in writing immediately, as our goal continues to be for [W&O] or [Travelers] to complete the project consistent with the Contract.

The March 17, 2011, amended complaint added Travelers as a party; the City alleged that Travelers breached the terms of the bond by failing to ensure that the project was completed and that Travelers was liable for funds expended to repair the damaged plant.[3]

_____

[3] Neither the motion to amend to add Travelers as a party nor the order allowing the amendment are included in the record on appeal; the record before us shows that counsel for the City signed the amended complaint on March 17, 2011, and that it was filed with the court on August 15, 2011. At oral argument, counsel for Travelers acknowledged that the amended complaint related back to March 17, 2011.

On June 20, 2012, Travelers moved for summary judgment on four grounds: (1) that the City's agreement with W&O did not require W&O to insure against sinkholes; (2) that the City failed to submit its claim to Hailey, thereby barring the action[4]; (3) that the City's action was barred by the two year period to institute an action under the bond; and (4) that the City suffered no damages. The court denied the motion, holding that grounds one and four presented questions of fact and, with regard to the second ground, that the City was not required to submit a claim to Hailey prior to instituting the suit. Of particular import to this appeal, as to ground three, the court held the following:

> The Court finds the limitations period provided in the bond began when the City gave notice it was considering declaring a contractor default which was June 24, 2009. The City declared contractor default on July 22, 2009. The City filed its motion to amend to add Travelers as a defendant on March 17, 2011. Since the order granting the amendment relates back to the filing on March 17, 2011, the City's action was brought before the two-year deadline which began July 22, 2009.[5]

Thereafter, Travelers moved for permission to file an interlocutory appeal pursuant to Tenn. R. App. P. 9; the court granted the motion. Upon application, this court granted Travelers permission to appeal. Travelers presents the following issues for review:

1.      Whether the Plaintiff's claim against Travelers is barred by the two-year contractual limitation provision contained in Paragraph 9 of the Performance Bond because the Plaintiff failed to file suit against Travelers "within two years after Contractor Default" as required by Paragraph 9 when the Plaintiff undisputedly failed to file suit against Travelers within two years of the occurrence of the alleged events of "Contractor Default" giving rise to the Plaintiff's claims against the Performance Bond.

2.      Whether the Plaintiff's claim is barred by the two-year contractual limitation provision contained in Paragraph 9 of the Performance bond because the Plaintiff failed to file suit against Travelers "within two

---

[4] This ground was based on Section 9.08 of the General Conditions of the contract, which states that "all disputes between W&O and the City be first submitted to the Engineer for its written decision and such decision is final and binding, subject to Section 10.05 of the General Conditions[.]"

[5] The court's findings as to those dates are supported by the June 24 and July 22 letters. No issue raised in this appeal relates to the adequacy of the declaration of default.

4

years after Contractor ceased working" as required by Paragraph 9 when the Plaintiff undisputedly failed to file suit against Travelers within two years after the Contractor removed its employees, equipment, machinery, and other personnel from the project site and never returned.

## I. STANDARD OF REVIEW

This appeal is from a grant of summary judgment. Summary judgment is appropriate to resolve a case where a party can show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also* Tenn. Code Ann. § 20-16-101.[6] In this case, the court held that the two year period for instituting actions under the bond began on July 22, 2009; Travelers disputes this holding and contends that the period began in February 2009. Travelers does not, however, contend that this is a factual issue which would preclude summary judgment; rather, Travelers contends that the determination of when the two year period began is a matter of contract interpretation. The interpretation of a contract is a question of law, which we review *de novo*. *Guiliano v. Cleo, Inc.* 995 S.W.2d 88, 95 (Tenn.1999).

We review the trial court's decision on a motion for summary judgment as a question of law. *Finister v. Humboldt Gen. Hosp.*, *Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). Accordingly, the decision enjoys no presumption of correctness on appeal and is reviewed *de novo*. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). We consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party and afford that party all reasonable inferences. *Id.* "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

## II. DISCUSSION

The pertinent portions of the performance bond are Paragraphs 3, 9, and 12.3, which are as follows:

> 3. If there is no Owner Default, Surety's obligation under this Bond shall arise after:

---

[6] Tenn. Code Ann. § 20-16-101 was enacted by 2011 Tenn. Pub. Acts. Ch. 498, and is applicable to motions for summary judgment in cases filed on or after July 1, 2011.

5

3.1. Owner has notified Contractor and Surety, at the address described in Paragraph 10 below, that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held no later than 15 days after receipt of such notice to discuss methods of performing the Contract. If Owner, Contractor and Surety agree, Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Owner's right, if any, subsequently to declare a Contractor Default; and

3.2. Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract. Such Contractor Default shall not be declared earlier than 20 days after Contractor and Surety have received notice as provided in Paragraph 3.1; and

3.3. Owner has agreed to pay the Balance of the Contract Price to:

1. Surety in accordance with the terms of the Contract;

2. Another contractor selected pursuant to Paragraph 4.3 to perform the Contract.

\*\*\*

9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the Work or part of the Work is located and shall be instituted within two years after Contractor Default or within two years after Contractor ceased working or within two years after Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

\*\*\*

12.3. Contractor Default: Failure of Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

In its first issue for resolution, Travelers contends that it is entitled to judgment as a matter of law because "Contractor Default," as that term is used in Paragraph 12.3 of the performance bond, is an occurrence or event in which the Contractor has failed to perform or to comply with the construction contract, and it is not necessary to have a notice and a formal declaration of default in that regard. Thus, according to Travelers, the two-year period began in February 2009, and the City's amendment to the complaint to add Travelers as a party was untimely. In opposition, the City interprets Travelers' obligation under the bond to have arisen pursuant to Section 3 in July 2009, when the City declared a "Contractor Default" in the July 22 letter.

When resolving disputes concerning contract interpretation, we are to ascertain the intentions of the parties based upon the usual, natural, and ordinary meaning of the contractual language. *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). We do not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Id.* (citing *Sutton v. First Nat'l Bank of Crossville*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981)). All provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract. *Guiliano*, 995 S.W.2d at 95 (citing *Rainey*, 836 S.W.2d at 118-19).

Contrary to Travelers' argument, under the "usual, natural, and ordinary meaning" of the words of the bond, notice and a declaration of default are necessary to carry out the intention of the parties to guarantee that the project would be completed within the contract price. Paragraph 12.3 sets forth the definition of a "Contractor Default" as the "[f]ailure of Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract." The clause "which has neither been remedied nor waived" shows an intent that the Contractor have an opportunity to perform or comply with the terms of the contract, or for the Owner to have an opportunity to waive the Contractor's non-performance or non-compliance. It is only after the Contractor has failed to remedy its non-performance or non-compliance, or the Owner has waived the same, that a "Contractor Default" under the bond occurs. In like manner, the language in Paragraph 3.2, that a Contractor Default cannot be declared less than twenty days after the notice specified in Paragraph 3.1, runs counter to Traveler's argument that the two year limitation runs from the "occurrence of the alleged events of 'Contractor Default'" rather than the formal declaration of default by the City.

7

Paragraph 3 unambiguously sets forth the conditions by which Travelers' obligation to perform under the bond arises – conditions with which the City complied. In the June 24, 2009 letter, which we agree with the trial court complied with Paragraph 3.1, the City requested a meeting with Travelers and W&O regarding completion of the construction project, and stated that it was prepared to pay Travelers the balance of the contract price. The July 22, 2009, letter served as the City's declaration of "Contractor Default," which was one of the triggers for the two-year limitation period set forth in Paragraph 9. Thus, provided none of the other events specified in Paragraph 9 occurred earlier, the City had until July 22, 2011, to institute a suit against Travelers.

The second issue raised by Travelers presents a factual dispute, the resolution of which is inappropriate for summary judgment. Travelers contends that W&O ceased working on the project in February of 2009 and, consequently, the amendment adding Travelers to the suit in May 2011 was untimely. In support of its motion, Travelers filed a Statement of Undisputed Material Facts with several exhibits, to which the City filed a response.[7] In its brief, Travelers cites to the affidavit of Tim Huddleston, the City's response to Travelers' Statement of Material Facts, the City's response to W&O's Statement of

_____

[7] Travelers' exhibits were numbered and included: (1) Addendum No. 2 to the contract, which added sinkhole repair to the project bid; (2) reports dated August 8, 2008, and September 30, 2008, prepared by Terracon, a company hired to perform geotechnical engineering services at the site and to analyze how sinkholes which developed in July and September 2008 should be repaired; (3) a letter from W&O to Hailey dated December 1, 2008, summarizing the sinkhole repairs that had taken place, the cost thereof, and requesting an additional 21 days to complete work under the contract; (4) a "Contract Change Order" which incorporated the information contained in the letter from W&O to Hailey and increased the contract price by $31,562.44; (5) a letter from the United States Department of Agriculture approving the change order; (6) four "Daily Inspection Reports" dated June 25, 2008, July 21, 2008, July 22, 2008, and September 16, 2008, prepared by Carlton Webster, a "Resident Inspector"; (8) [There is no Exhibit 7 in the record on appeal.] the affidavit of Timothy Huddleston, Vice President of W&O, which stated that he was involved in the bidding process and contract negotiations, the construction of the new lagoon, and remediation of six sinkholes that developed during construction; (10) [There is no Exhibit 9 in the record on appeal.] buildings and property schedules for Marion Natural Gas System dated January 28, 2008, January 28, 2009, and January 28, 2010; (12) the City's Amended and Supplemental Responses to [W&O's] First Set of Interrogatories and Requests for Production; (11) [Exhibit 11 was placed immediately after Exhibit 12 in the record on appeal.] a letter dated May 15, 2009, from the Swallows Agency to W&O advising that W&O's builder's risk coverage did not relate to the sinkholes; (13) one page of the Second Affidavit of Tim Huddleston; (14) and the City's Response to the First Interrogatories of [Travelers]. Exhibits (13) and (14) were not identified as exhibits to the Statement of Undisputed Material Facts when filed in the trial court, but were included with the statement of facts in the record on appeal.

Material Facts and to W&O's Statement of Additional Undisputed Facts to show that W&O ceased working on the project in February 2009.[8]

We have reviewed the material cited by Travelers; it is primarily centered on the statement in the Huddleston affidavit that "W&O Construction did not have any employees, equipment, machinery or other personnel actually working at the Sewer Treatment Plant Expansion project in February of 2009."[9]

---

[8] W&O had also filed a motion for summary judgment; that motion was denied and is not at issue in this appeal. The responses cited in Traveler's brief were to W&O's Statements of Material Facts and W&O's Statement of Additional Material Facts filed with reference to that motion.

[9] The portion of the City's Response to Travelers' Statement of Material Facts cited by Travelers references the Huddleston affidavit and states:

> 21. W&O did not have any employees, equipment, machinery or other personnel still working on the Sewer Treatment Plant Expansion project in February 2009.
> RESPONSE: Denied that the work was completed by that date. On January 20, 2009, W&O informed Hailey that "there is minor grading and pavement repair that needs be [sic] performed prior to the project being 100% completed. Due to the weather during this time of year, this work will not be able to be performed until Spring 2009. We request that our time for the project be stopped on 12-18-2008, until we can remobilize to finish the sitework." The Certificate of Substantial Completion was not signed by the co-defendant engineer until November 4, 2009, three months after this suit was filed, and was not accepted by Owner.

The portion of the City's Response to W&O's Statement of Material Facts cited in Travelers brief likewise references the Huddleston affidavit and states:

> 18. W&O did not have any employees, equipment, machinery or other personnel still working on the Sewer Treatment Plant Expansion project in February of 2009.
> RESPONSE: Denied that there was not work still to be done. On January 20, 2009, W&O informed Hailey that "there is minor grading and pavement repair that needs be [sic] performed prior to the project being 100% completed. Due to the weather during this time of the year, this work will not be able to be performed until Spring 2009. We request that our time for the project be stopped on 12-18-2008, until we can remobilize to finish the sitework." The Certificate of Substantial Completion was not signed by the co-defendant engineer until November 4, 2009, three months after this suit was filed, and was not accepted by Owner.

The portion of the City's Response to W&O's Statement of Additional Undisputed Facts cited in Travelers' brief likewise references the Huddleston affidavit and states:

> 13. W&O did not have any employees, equipment, machinery or other personnel actually
> (continued...)

In opposition to the motion for summary judgment, the City filed a response to Travelers' statement of facts on August 29, 2012, which stated in pertinent part (in addition to the response quoted in footnote 9, *supra*):

> 19. W&O had completed all work relating to the actual construction of the lagoon, including the repair of six sinkholes that developed during that construction process, by December 18, 2008.
>
> **RESPONSE:** Denied that the work was completed by that date. On January 20, 2009, W&O informed Hailey that "there is minor grading and pavement repair that needs be [sic] performed prior to the project being 100% completed. Due to the weather during this time of year, this work will not be able to be performed until Spring 2009. We request that our time for the project be stopped on 12-18-2008, until we can remobilize to finish the sitework." The Certificate of Substantial Completion was not signed by the co-defendant engineer until November 4, 2009, three months after this suit was filed, and was not accepted by Owner.
>
> Moreover, the Contract provides that "Contractor's obligation to perform and complete the Work in accordance with the Contract Documents shall be absolute"[sic] and that Contractor's obligation to perform the work according to the contract is not released by . . . 3. the issuance of a certificate of Substantial Completion by Engineer or any payment related thereto by Owner; 4. use or occupancy of the Work or any part thereof by Owner."

In addition, the following statements in Mr. Huddleston's affidavit are material to the issue of whether W&O had ceased working on the project in February 2009:

> 10. W&O has offered on more than one occasion to repair the sinkhole that developed in the new lagoon in February of 2009 under the terms of Addendum No. 2 to the Contract.

---

[9](...continued)
working on the Sewer Treatment Plant Expansion project in February of 2009.
RESPONSE: Admitted for the purpose of summary judgment that W&O had ceased working on the project, temporarily, until it could remobilize in Spring, 2009.

10

11. The City of South Pittsburg has refused to honor the terms of Addendum No. 2 by compensating W&O to undertake and complete the necessary repairs to the new lagoon.

The materials filed in support of and in opposition to the motion show a genuine issue of fact as to when W&O ceased working on the project; this issue is material in determining whether the two-year period to institute a proceeding under the bond began in February 2009, in accordance with Paragraph 9 of the performance bond. Travelers has the burden of persuading the court that no genuine issue of material fact exists; any dispute as to a material fact requires that the motion for summary judgment be denied. *See Byrd*, 847 S.W.2d at 211, 215. Travelers has failed to meet its burden to show the absence of a material fact in dispute and is therefore not entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

11